DOWNEY v. FINUCANE et al.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

1. ESTOPPEL (§ 72*)—ACTS MAKING INJURY POSSIBLE.

Where several promoters cause stocks and bonds to be put upon the market, or know that it is being done by one or more of their number for them, or in their interest, they are all personally liable to a purchaser of a bond and stock for false and fraudulent statements contained in a prospectus by which he was induced to purchase the bond; and it is immaterial whether the one promoter who signed the prospectus and sold the bond was acting under the direction of a syndicate of which he and the other promoters were members, or as the agent of a corporation interested in the disposal of the bonds. Such of the defendants as were personally free from wrongdoing may be held liable under the rule that, where one of two innocent persons must suffer from the fraud of another, the one who put it in the power of the person that perpetrated the fraud should suffer, rather than the other innocent person.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 188; Dec. Dig. § 72.*]

2. APPEAL AND ERROR (§ 1062*)—REVIEW—DISCRETION OF TRIAL COURT—SUBMISSION OF SPECIAL QUESTIONS.

In an action for fraudulent statements contained in a prospectus of an enterprise which defendants were promoting, the evidence related to numerous representations and to numerous corporations. The trial court, endeavoring to secure the aid and co-operation of counsel in framing questions to the jury, submitted six specific questions, as to three of which the jury returned no answers, but, while they accompanied their verdict with an irrelevant suggestion, they appeared from the verdict to have understood the specific questions. *Held* that, while it might have been better not to have submitted so many questions, the submission of the specific questions was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

3. JURY (§ 136*)—PEREMPTORY CHALLENGES—NUMBER ALLOWED TO SEVERAL PARTIES DEFENDANT.

Code Civ. Proc. § 1176, which provides that each party on the trial of an issue of fact in a civil action may peremptorily challenge not more than six jurors, does not give six challenges to each person a party to the action, but to all the persons on each side of the controversy; and hence, where several parties are made defendants in an action, they together are entitled to only six peremptory challenges.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 607–618; Dec. Dig. § 136.*]

4. APPEAL AND ERROR (§ 978*)—DISCRETION OF COURT—NEW TRIAL—MISCONDUCT OF COUNSEL.

After the jury had retired for deliberation, and in the absence of the presiding justice, counsel sent a newspaper statement which had been ruled out, appended to an exhibit which the jury had called for. *Held,* in view of the trial court's positive instructions to disregard the statement, that the conduct of counsel was not such misconduct as to require a reversal of the order denying a new trial therefor. •

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3866–3870; Dec. Dig. § 978.*]

McLennan, P. J., dissenting.

Appeal from Trial Term, Monroe County.

Action by Frank H. Downey against Thomas W. Finucane and others. Judgment for plaintiff, and defendants appeal. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

John G. Milburn, Joseph W. Taylor, Walter S. Hubbell, and Daniel J. Kenefick, for appellants.

Alton B. Parker, James M. E. O'Grady, Elbridge L. Adams, and John Desmond, for respondent.

KRUSE, J.  The action is for fraud and deceit.  The plaintiff had a verdict, and the defendants appeal.  The primary questions presented by the appeal are (1) whether actionable fraud was established, (2) whether such of the defendants as were personally free from wrongdoing are liable for the misconduct of the others, and generally whether the trial was fair and free from prejudicial error.

The plaintiff purchased certain bonds and stock, relying, as he claims, upon the statements contained in a prospectus.  It is contended by him that the statements were untrue and of such a character, and the prospectus issued under such circumstances, as likely to deceive, and that he, in fact, was deceived thereby; that, while the prospectus was issued in the name of one of the defendants, all were interested in putting the bonds and stock on the market, and were associated together for the purpose of carrying through a telephone enterprise, which included the selling of the bonds and stock in question; and that all of the defendants are responsible for the statements contained in the prospectus and liable for any deceit or fraud perpetrated thereby.

It is unnecessary to set forth in full the prospectus which contains the statements alleged to be false.  It is entitled: "Offer of United States Independent Telephone Company Collateral Trust Thirty Year Five Per Cent. Gold Bonds and Stock Trust Certificates."  It sets forth that the company was incorporated under the laws of New Jersey, with an authorized capital of $50,000,000, divided into shares of $100 each, for the purpose, among others, of developing and financing the independent telephone business in the United States; that it has acquired a majority of the authorized capital stock of the New York Independent Telephone Company and of the Stromberg-Carlson Telephone Manufacturing Company, and is negotiating for the purchase of other shares of stock of said companies and of other companies.  It states the number of shares of its capital stock that have been issued and the number that will be deposited under a voting trust agreement; names the depositary and the persons who have consented to act as voting trustees; that, after the performance of all existing contracts, there will remain a certain number of shares of stock which will not be issued for the present; that the corporation has authorized the execution of a collateral trust mortgage to a trustee to secure an issue of $25,000,000 of 5 per cent. collateral trust gold bonds, describing the character of the bonds; that the mortgage will be a first lien on a majority of the capital stock of the corporation and a majority of the capital stock of the other two companies referred to, and such additional shares of such companies or

other companies or other property that may be acquired with the proceeds of the bonds; that $17,000,000 of the bonds are authorized under the mortgage to be issued immediately and the balance of $8,000,000 to be held in escrow under carefully guarded restrictions for acquiring other corporate securities or property, as therein stated.

The parts of the prospectus containing the alleged false statements upon which the fraud is predicated are as follows:

(1) "Such $17,000,000 of bonds are to be issued pursuant to contracts already made by the company and binding on it, and as a result of the performance of said contracts the company will have $5,000,000 cash in its treasury, in addition to the securities pledged under the mortgage."

(2) "New York Independent Telephone Company. This company is incorporated under the laws of the state of New York, with an authorized capital of $50,000,000. It owns a franchise in the city of New York, acquired under the advice of eminent counsel, under which it is its purpose to begin, as soon as practicable, and in the near future, the construction of an independent telephone system in that city."

(3) "Stromberg-Carlson Telephone Manufacturing Company. The Stromberg-Carlson Telephone Manufacturing Company was incorporated in March, 1902. Since that time, owing to the growth of its business, it has been found necessary to double its capital stock in order to take care of the increasing demand for its product. From its incorporation this company regularly paid 7 per cent. dividends on its preferred stock. During the first year of its existence it paid 8 per cent., and thereafter a regular annual dividend of 10 per cent. on its common stock. During the year 1903–4 extra dividends aggregating 30 per cent. were paid on the common stock."

(4) "Messrs. Haskins & Sells, certified public accountants, have made a report under date of September 23, 1905, covering the financial operations of the Stromberg-Carlson Telephone Manufacturing Company, from which it appears that the net earnings of the company for the year ending December 31, 1904, amounted to $864,469.18. It also appears from the report that the net earnings for the first six months of 1905 amount to $467,036.91. Messrs. Haskins & Sells estimate that the net earnings for the year 1905 will be approximately $900,000."

(5) "413,030 shares of the capital stock of the U. S. Independent Telephone Company have been issued or are contracted to be issued."

(6) "More than $7,000,000 of the $17,000,000 bonds have been sold at private sale on a cash or property basis equivalent to this offering."

The prospectus is dated October 7, 1905, and is signed by one of the defendants. The plaintiff alleges in his complaint that he relied upon these representations and was induced to purchase and did purchase one of the bonds of the par value of $1,000, and stock of the par value of $400, and paid therefor the sum of $1,000; that the representations were false and were known to be by the defendants, and were made by them without any knowledge that they were true, and careless whether they were true or false.

Each of the defendants challenged the sufficiency of the evidence and asked that a verdict be directed in his favor, which was denied. Thereupon they each further asked the trial judge to take from the jury certain of the questions upon which the plaintiff predicated fraud, which was likewise denied, and exceptions taken to the rulings.

[1] I think it unimportant whether the defendant who signed the prospectus and sold the bonds and stock was acting under the direction of the syndicate, of which he and the other defendants were members, as the plaintiff claims, or as the agent of the United States

Independent Telephone Company, as the defendants claim, if in fact the prospectus was issued by the authority or direction of the defendants. In whichever capacity the defendants assumed to act, if they caused the bonds and stock to be thus put on the market, or had knowledge that it was being done by one or more of their number for them or in their interest, they are all personally liable to the purchaser of the bonds and stock for any fraud arising out of the false statements contained in the prospectus. I think it can be found from the evidence that all of the defendants were so interested in and connected with the enterprise that, if any of them are liable, all may be liable. Even as to such of the defendants as are personally free from wrongdoing, they may be held liable, as it seems to me, under the familiar rule that, where one of two innocent persons must suffer from the fraud of another, the one who put it in the power of the person that perpetrated the fraud should suffer rather than the other innocent person.

The trial judge submitted to the jury specific questions, and from the answers returned by them and the general verdict rendered in favor of the plaintiff it is apparent that the jury found against the defendants upon each of the six statements contained in the prospectus, claimed by the plaintiff to be false and fraudulent.

I shall not attempt to collate the evidence or marshal the facts upon the various propositions; and the law relating to fraud and deceit is well settled and requires no discussion. The difficulty usually arises, as here, in its application to a given state of facts. I think there is evidence to sustain the verdict, based upon each of the six separate statements. But if fraud may be predicated upon any one of them and there is evidence to sustain the verdict of the jury upon that one, and the other elements to make out a case in fraud exist, the plaintiff's case has been made out; but whether this verdict can be sustained upon that theory we need not decide. The statements may be arranged in three groups. The first, fifth, and sixth relate to stock and bonds of the United States Independent Telephone Company, the third and fourth to the Stromberg-Carlson Telephone Manufacturing Company, and the second to the stock of the New York Independent Telephone Company, and the New York City franchise.

As regards the $17,000,000 of bonds referred to in the first statement, it seems that, instead of an absolute contract for the sale of the bonds, there was a mere option, binding only upon the company; and, while the jury found that the statement fairly meant either an absolute contract or a mere option, they further found that the plaintiff understood that it was an absolute contract for the sale of the bonds, which would result in the company having $5,000,000 in cash in the treasury, and that the statement was purposely so worded as to make it appear that there was a bilateral contract of sale; that $7,000,000 of the $17,-000,000 of bonds had not been sold at private sale on a cash or property basis equivalent to the offer; and, as to the representation that 413,030 shares of the United States Independent Telephone Company had been issued, it is not claimed that the stock had not been issued, but that it had not been legally issued for money or property equiva-

lent in value of cash; that the plaintiff had the right to believe that the $41,000,000 of stock represented $41,000,000 worth of property, and that the New York City franchise, which formed the basis for issuing the larger part of the stock, was of little value and in fact of no value, for the purpose of carrying on a general telephone business. That franchise will again be referred to a little later.

As regards the statement relating to the Stromberg-Carlson Telephone Manufacturing Company and the report of the public accountants relating thereto, I think it was fairly a question of fact as to whether the statement fairly stated the business and condition of the company, and whether the statements of the report of the accountants contained in the prospectus was a fair statement thereof. A material part thereof was omitted from the statement. The most important representation, and out of which the most serious question arises upon this appeal, is the one relating to the New York City franchise. After stating that the New York Independent Telephone Company is incorporated under the laws of the state of New York, with an authorized capital of $50,000,000, the prospectus continues:

"It owns a franchise in the city of New York, acquired under the advice of eminent counsel, under which it is its purpose to begin, as soon as practicable, and in the near future, the construction of an independent telephone system in that city."

This is an absolute statement of a right and of ownership thereof, carrying with it all that such a right implies. It is an absolute statement of a fact which is not true, as I understand the effect of the decision in the mandamus proceeding in Matter of New York Independent Telephone Company, 133 App. Div. 635, 118 N. Y. Supp. 290, affirmed 200 N. Y. 527, 93 N. E. 1126. The additional statement that the franchise was acquired under the advice of eminent counsel adds to rather than detracts from the force of the declaration. That, however, is not all there is to the question. What is claimed on behalf of the defendants is that they made the statement in good faith, that such advice was given (which is true), and that they had a right to rely upon that advice and did rely upon it, as is evidenced by putting their own money into the enterprise. I confess there is force in this contention, especially in view of the high standing of the lawyers upon whose opinion they relied.

But there is another side to that question. The prospectus does not tell all the facts relating to the franchise. When all the facts are stated, an investment in the bonds and stock does not appear so attractive. It may well be that the plaintiff would not have put his money into the enterprise had he known the situation as it was and as the defendants actually knew it to be. He was not informed that the company itself had never obtained or made application to any governmental authority for such franchise, and that the only right it had was a right or franchise which up to that time had been used for operating an electric burglar alarm system within a limited area in certain districts in the city of New York by another corporation whose capital stock the promoters had acquired; nor the purposes for which that corporation had been organized, nor by what authority the right or

franchise under which it was operating had been granted, nor the terms thereof; nor that legal proceedings were contemplated or would be necessary to obtain the necessary permits to occupy the streets and subways of the city; nor that the construction of the system depended upon securing the necessary capital, estimated at $47,000,000; nor was he told that the entire capital stock of the corporation which had been operating the electric burglar alarm system was of the par value of $5,000, for which the promoters had paid $250,000, and that $41,000,000 of the $50,000,000 capital stock of the New York Independent Telephone Company had been issued therefor and of the $41,000,000 of the stock of the New York Independent Telephone Company, $39,000,000 had been turned over to the United States Independent Telephone Company for $38,597,500 of its stock and $1,278,000 of its bonds. With these additional facts, the enterprise appears highly speculative, to say the least. While the defendants, of course, had the right to hazard their own money in the enterprise, fair dealing required, as it seems to me, that the money of others should not have been taken without informing them fully of the nature of the hazard.

But it is urged that it is quite inconceivable that men of the high standing, such as some of these defendants are, would do intentional wrong. That is conceded; but, if I am right in the view that all are legally liable, under the circumstances, for the fraud perpetrated by one or more of their more active associates, that suggestion loses its force. It not infrequently happens that persons of the highest standing are held liable for the torts of their agents. The very fact that there were connected with this enterprise men of integrity and good business judgment gave weight to the prospectus, and enabled a seller to dispose of the stock and bonds the more readily.

[2] We come now to the conduct of the trial. I think no prejudicial error was made in rulings upon questions of evidence; nor do I think that submitting the specific questions to the jury misled them, nor that some of their answers were inconsistent with others. I think it might have been better not to have submitted so many questions, but the trial judge did his best to secure the aid and co-operation of counsel in framing them, and, upon the whole, I think the jury showed a clear comprehension of the questions submitted. It is true that three of the questions were left unanswered and an irrelevant suggestion was made at the end of their verdict; but that suggestion evidently was prompted by the best of motives. The jury was laboring under the difficulty of following what they regarded their plain duty, and at the same time fearing that their verdict might cast an injust aspersion upon some of the defendants.

[3] Neither do I think the trial court erred in allowing but the six peremptory challenges to all of the defendants, instead of six to each defendant. I think the provisions of the Code of Civil Procedure (section 1176, Code Civ. Proc.), giving to each party six peremptory challenges, does not mean to each person a party to the action, but to all the persons on each side of the controversy. There were but two sides to the controversy in this action. Upon one side was the plaintiff; upon the other side the defendants. The interests

of the several defendants were identical. They were not antagonistic or adverse to each other. There was no controversy between the defendants. ✗

[4] As regards the attorney's misconduct in sending to the jury room after the jury had retired for deliberation, and in the absence of the presiding justice, a newspaper statement which had been ruled out, appended to an exhibit which the jury had called for, while that was highly improper and the explanation for so doing is quite unsatisfactory, we are not now dealing with the misconduct, except so far as it may have affected the result of the litigation.

I think, in view of the nature of the statement, the evidence which had been admitted upon the subject covered thereby, and the positive instructions of the judge to disregard the same, we should affirm the order refusing to grant a new trial upon that ground.

I think the judgment and several orders appealed from should be affirmed, with costs.

Judgment and orders affirmed, with costs. All concur, except

McLENNAN, P. J., who dissents on the ground that the evidence does not establish a cause of action for "fraud and deceit" against the appellants or either of them under the authorities. Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651; Lyon v. James, 97 App. Div. 385, 90 N. Y. Supp. 28, affirmed 181 N. Y. 512, 73 N. E. 1126; Bell v. James, 128 App. Div. 241, 112 N. Y. Supp. 750, affirmed 198 N. Y. 513, 92 N. E. 1078; Polhemus v. Polhemus, 114 App. Div. 781, 100 N. Y. Supp. 263; Duryea v. Zimmerman, 121 App. Div. 560, 106 N. Y. Supp. 237; Thayer v. Schley, 137 App. Div. 166, 121 N. Y. Supp. 1064. On the further ground that reversible error was committed by the trial court in the admission and rejection of evidence and further because the manner in which the jury disposed of the specific questions submitted to it, and the fact that at the close of the trial, which had lasted nearly three weeks, the jury recommended "the clemency of the court for (the appellants) Messrs. Eastman, Sibley, Strong and Watson," very clearly indicate that the jury did not appreciate or understand the issues or the nature of the issues submitted to it for determination.

The judgment and order appealed from should therefore be reversed, and a new trial granted, with costs to appellants to abide the event.